IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEX VESELY, individually and as special administrator and brother of JITKA VESELY,<br><br>    Plaintiff,<br><br>v.<br><br>ARMSLIST, LLC, an Oklahoma Limited Liability Company,<br><br>    Defendant. | Civil Action No. 13 CV 00607<br><br>Hon. Charles R. Norgle |

## ORDER

Defendant's Motion to Dismiss [13] is granted. This case is terminated.

## STATEMENT

  On April 13, 2011, Jitka Vesel ("Jitka") was shot and killed in Illinois by Demetry Smirnov ("Smirnov"), a resident of Canada. Smirnov illegally purchased the handgun he used to commit the crime from a private seller, Benedict Ladera ("Ladera"), a resident of Seattle, Washington, who posted an advertisement for the handgun on armslist.com. Smirnov traveled to Seattle to meet Ladera and, although the handgun was advertised for $400 on armslist.com, Smirnov offered an "extra $200" "because he was from Canada." Compl. ¶ 34. In this diversity jurisdiction lawsuit, Plaintiff Alex Vesely, as special administrator and next of kin of Jitka ("Plaintiff") asserts three claims against Defendant Armslist, LLC ("Defendant"): (1) a Wrongful Death Act claim pursuant to 740 Ill. Comp. Stat. 180/0.01, *et seq.*, alleging negligence; (2) a Survival claim pursuant to 755 Ill. Comp. Stat. 5/27-6 for pain and suffering occurring before Jitka Vesel died; and (3) a Family Expense claim under 750 Ill. Comp. Stat. 65/15 for funeral and burial expenses. Neither Ladera, nor Smirnov is a party to this action. Before the Court is Defendant's motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted.

  To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, a plaintiff's complaint "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." Indep. Trust Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 935 (7th Cir. 2012) (internal quotation marks and citation omitted). The Court accepts as true all well-pleaded facts in Plaintiff's complaint, and draws all reasonable inferences in his favor. Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis., 657 F.3d 496, 502 (7th Cir. 2011). But the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." Alam v. Miller Brewing Co., 709 F.3d 662, 666 (7th Cir. 2013) (internal quotation marks and citation omitted). Additionally, a plaintiff "can plead himself out of court by pleading facts that show he has no legal claim." Atkins v. City of Chi., 631 F.3d 823, 832 (7th Cir. 2011) (citations omitted). Pleadings consist of "the complaint, any exhibits attached thereto, and the supporting briefs." Cole v. Milwaukee Area Technical Coll. Dist., 634 F.3d 901, 903 (7th Cir. 2011) (citing Thompson v. Ill. Dep't of Prof'l Regulation, 300 F.3d 750, 753 (7th Cir. 2002)).

To state a claim under the Illinois Wrongful Death Act, a plaintiff must plausibly allege that: "(1) defendant owed a duty to the deceased; (2) defendant breached the duty; (3) the breach proximately caused the decedent's death; and (4) monetary damages resulted to persons designated under the Act." Lough v. BNSF Ry. Co., 988 N.E.2d 1090, 1094 (Ill. App. Ct. 2013) (citations omitted). Under Illinois law, "[w]hether a duty is owed presents a question of law." Swearingen v. Momentive Specialty Chems., Inc., 662 F.3d 969, 972 (7th Cir. 2011) (citing Thompson v. Gordon, 948 N.E.2d 39, 45 (Ill. 2011)). Here, Plaintiff alleges that Defendant "owed a duty to the public, including Jitka, to operate its website, armslist.com, in a commercially reasonable manner," Compl. ¶ 49, that Defendant breached that duty by "designing its website to encourage its users to circumvent existing gun laws . . . by easily enabling prospective purchasers to search for and find gun sellers in any and all states," id. ¶ 50, and that "[a]s a proximate cause of Armlist's breach, Smirnov was able to locate a private firearm seller to obtain the murder weapon he used to kill Jitka," id. ¶ 51.

Defendant argues that Plaintiff's complaint should be dismissed because he has not and cannot allege that it owed a duty to Jitka, the deceased. The Court agrees. "In general, one has no duty to control the conduct of another to prevent him from causing harm to a third party, but there are exceptions to this, based on "special relationships." Estate of Johnson by Johnson v. Condell Mem. Hosp., 520 N.E.2d 37, 40 (Ill. 1988) (internal citation omitted); see also Young v. Bryco Arms, 821 N.E.2d 1078, 1089 (Ill. 2004). "Special relationships" include: "(1) common carrier and passenger, (2) innkeeper and guest, (3) business invitor and invitee, and (4) voluntary custodian and protectee." Wells v. Endicott, Nos. 5-11-0570, 5-12-0116, 2013 WL 2384606, at *10 (Ill. App. Ct. May 31, 2013) (citing Hernandez v. Rapid Bus Co., 641 N.E.2d 886, 890 (1994)). Plaintiff does not allege that Defendant and Jitka had a "special relationship" that gave rise to a duty. Nor does Plaintiff allege that Defendant had a "special relationship" with Smirnov, the person that caused the harm. Instead, Plaintiff argues that public policy weighs in favor of judicial recognition of an unrecognized duty to the general public because Defendant allegedly negligently designed its website to enable illegal gun sales to dangerous people.

To determine whether a duty exists, in light of public policy, the Court considers four factors: "(1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant." City of Chi. v. Beretta U.S.A. Corp., 821 N.E. 2d 1099, 1125 (Ill. 2004) (citing Bajwa v. Metro. Life Ins. Co., 804 N.E.2d 519, 529 (Ill. 2004)). Here, Plaintiff argues that it was foreseeable that Defendant's website would enable and facilitate illegal handgun sales—by automatically publishing advertisements posted by private sellers at the national level and facilitating the search of those sellers by private buyers—and that those sales would lead to criminal shootings. This argument is speculative at best. The Court does not accept as true Plaintiff's mere conclusion that Defendant encourages its users to circumvent existing gun laws by enabling prospective purchasers to search for and find gun sellers in any

state. As Defendant points out, "[a] person not licensed under the GCA and not prohibited from acquiring firearms may purchase a firearm from an out-of-State source and obtain the firearm if an arrangement is made with a licensed dealer in the purchaser's State of residence for the purchaser to obtain the firearm from the dealer." United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms - Frequently Asked Questions – Unlicensed Persons*, http://www.atf.gov/content/firearms-frequently-asked-questions-unlicensed-persons#gca-unlicensed-transfer (citing 18 U.S.C. § 922(a)(3), (b)(3)) (last visited July 26, 2013).

In addition, Plaintiff's reliance on Pavlides v. Niles Gun Show, Inc., 637 N.E. 2d 404 (Ohio App. Ct. 1994), is misplaced. There, victims of a shooting sued the promoters of a gun show where several minors stole firearms used in the shooting. Id. at 406-07. The Ohio court applied only a foreseeability test, and found that the defendants owed the general public the duty of preventing unsupervised minors' entrance into a gun show where unsecured firearms are displayed. Id. at 409. The Ohio court noted that the defendants took no action to prevent the theft of weapons and permitted four unsupervised minors to enter the gun show on two separate occasions. Id. Additionally, although the defendants required the independent vendors to follow certain rules and regulations, those rules and regulations specifically excluded the requirement to secure displayed firearms and the requirement to prohibit the sale of ammunition to minors. Id.

Plaintiff characterizes Defendant's website as an online gun show. However, at a gun show, firearms are displayed and offered for sale by independent vendors who rent space from the corporation, whereas Defendant's website, an electronic bulletin board, has no involvement in the sales transaction of the products, including firearms, merely advertised on the website. Defendant does not sell, auction, deliver or ship firearms or ammunition. Moreover, Plaintiff concedes that Defendant's website has a disclaimer that places the entire burden of complying with state and federal gun laws on the user of the website. Compl. ¶ 45. Indeed, the user cannot proceed to use the website without first agreeing to this term of use. Id. Although "[i]t is reasonably foreseeable, in a nation that permits private ownership of firearms, that criminals will obtain guns and it is not only likely, but inevitable, that injuries and death will result," Beretta U.S.A. Corp., 821 N.E. 2d at 1125, the Court finds that the criminal conduct of third-parties who misuse Defendant's website to illegally sell and buy firearms is not a reasonably foreseeable consequence of the website design.

Furthermore, the magnitude of the burden that Plaintiff seeks to impose on Defendant of guarding against illegal gun sales, by altering its business practice to become involved in sales transactions between third-parties, is immense and, as Defendant suggests, would effectively put it out of business. Accordingly, the Court finds that Defendant owes no duty to the general public to operate its website to control private individual users' sale of handguns. Because no duty is owed to the deceased (or to the general public), Defendant's motion to dismiss Plaintiff's Wrongful Death Act claim is granted. Plaintiff's Survival claim and Family Expense claim, alleging the same negligence, are also dismissed.

IT IS SO ORDERED.

ENTER: *[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: July 29, 2013