In the

# United States Court of Appeals

### For the Seventh Circuit

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 13-3505

ALEX VESELY, individually and as
special administrator and brother of
JITKA VESEL (Deceased),

                                     *Plaintiff-Appellant*,

*v.*

ARMSLIST LLC, an Oklahoma Limited
Liability Company,

                                     *Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-00607 — **Charles R. Norgle**, *Judge.*

ARGUED MAY 29, 2014 — DECIDED AUGUST 12, 2014

Before BAUER, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Jitka Vesel ("Jitka") was shot with a handgun that was illegally purchased by Demetry Smirnov who found the weapon available for purchase on Armslist.com ("Armslist"), a website that facilitates the sale of guns between

private owners. Alex Vesely ("Alex") brought this action on her behalf, alleging that Armslist's negligence in facilitating the sale proximately caused her death.[1] The district court held that Armslist owed no duty to Jitka and therefore could not be liable for the actions of Smirnov. For the following reasons, we affirm.

## I. Background

In 2011, Jitka was shot and killed by Demetry Smirnov, a Russian immigrant residing in Canada. Smirnov had met Jitka online and sought to develop a romantic relationship with Jitka, but she spurned his advances.

In response, Smirnov got on Armslist.com to obtain a handgun. Armslist provides owners of firearms and other outdoor gear the opportunity to post classified advertisements to sell their goods. Smirnov came across an advertisement posted by Benedict Ladera, a Seattle resident for the sale of a .40 caliber handgun.

Prior to advertising the sale of the firearm, Ladera accepted a variety of standard terms, including:

- I understand that ARMSLIST DOES NOT become involved in transactions between parties and does not certify, investigate, or in any way guarantee the legal capacity of any party to transact.

- I am responsible for obeying all applicable enforcement mechanisms, including, but not limited to federal, state, municipal, and tribal statutes, rules, regulations,

---

[1] Alex and Jitka, though biological siblings, adopted variant spellings of their surname after immigrating to the United States. Their first names will be used throughout for ease of reference.

- ordinances, and judicial decisions, including compliance with all applicable licensing requirements.

- If I am unsure about firearms sales or transfers, I will contact the Bureau of Alcohol, Tobacco, Firearms, and Explosives at 1-800-ATF-GUNS and visit the ATF website at http://www.atf.gov.

Smirnov met Ladera in Seattle and purchased the firearm from him for $400. Federal law prohibits a private seller from directly transferring a firearm to a resident of another state or country. 18 U.S.C. § 922(a)(5). The sale of the firearm was illegal because Smirnov lived outside the State of Washington. After Smirnov purchased the firearm, he returned to Chicago and began stalking Jitka. On April 13, 2011, Smirnov followed her to a parking lot and killed her with the handgun he purchased from Ladera. Smirnov immediately turned himself in to the police and confessed to the murder. He received a sentence of life in prison for the crime. Ladera pleaded guilty to illegally transferring a firearm to an out-of-state person and was sentence to one year and a day in prison.

Jitka's brother Alex brought three state claims against Armslist: (1) a negligence claim under the Wrongful Death Act; (2) a Survival claim for Jitka's pain and suffering prior to her death; and (3) a Family Expense claim for funeral and burial expenses. Neither Ladera nor Smirnov were named as parties to the complaint.

The district court granted Armslist's 12(b)(6) motion to dismiss. The court found that Alex could not establish that Armslist owed a duty to Jitka. Therefore, Armslist had no duty to control the conduct of Smirnov and could not be liable for the harm that

Case: 1:13-cv-00607 Document #: 60 Filed: 09/03/14 Page 4 of 8 PageID #:308
Case: 13-3505 Document: 00712305412 Filed: 09/03/2014 Pages: 8

followed from his actions. The court also dismissed two of Alex's post-judgment motions. The first was a motion to reconsider and the second was a motion for leave to file an amended complaint on the ground that the judgment against Alex had not first been set aside or vacated.

## II. ANALYSIS

We review a 12(b)(6) dismissal for failure to state a claim *de novo* and construe all well-pleaded facts and draw all inferences in the light most favorable to the nonmoving party. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). In order to survive a motion to dismiss, a plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And while we draw all reasonable inferences and facts in favor of the nonmovant, we need not accept as true any legal assertions or recital of the elements of a cause of action "supported by mere conclusory statements." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

*A. Negligence*

To prevail on a claim of negligence under Illinois law, a plaintiff must "prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Buechel v. United States*, 746 F.3d 753, 763–64 (7th Cir. 2014) (citing *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011)). The district court found that the first element, the existence of a duty of care, was lacking.

No. 13-3505                                                5

While breach and proximate cause are factual matters for the jury, the existence of a duty is a matter for the court to decide. *Adams v. N. Ill. Gas Co.*, 809 N.E.2d 1248, 1257 (Ill. 2004). And the touchstone to determine the existence of a duty is "to ask whether a plaintiff and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Marshall v. Burger King Co.*, 856 N.E.2d 1048, 1057 (Ill. 2006). It has long been established that under common law, "the universally accepted rule … is that a private person has no duty to act affirmatively to protect another from criminal attack by a third person absent a 'special relationship' between the parties." *Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007). Illinois recognizes four special relationships: (1) common-carrier passenger; (2) innkeeper and guest; (3) custodian and ward; and (4) business invitor and invitee. *Marshall*, 856 N.E.2d at 1058.

Alex did not, nor could he, allege that a special relationship existed between the parties; the fact is that no relationship between Armslist and Jitka, special or otherwise, ever existed. Nor does Alex cite to any federal or state law breached by Armslist in posting the advertisement. His complaint simply states that "Armslist owed a duty to the public, including Jitka, to operate its website, armslist.com, in a commercially reasonable manner." Yet, like his brief, this completely ignores the requirement of a special relationship when an intervening criminal act by a third person arises. Alex suggests that public policy favors a judicial finding of a duty because Armslist's allegedly negligent behavior facilitates gun sales that in turn lead to gun crimes. Indeed, the district court engaged in this exact analysis, using the four factors commonly used in determining the existence of a duty ((1)reason-

6                                                          No. 13-3505

able foreseeability of the injury; (2) likelihood of the injury; (3) magnitude of the burden of guarding against the injury; and (4) consequences of placing that burden on the defendant). *City of Chi. v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1125 (Ill. 2004). But these factors need not be addressed in criminal attacks in the absence of a "special relationship" between the parties. *See Iseberg*, 879 N.E.2d at 290 ("We can find no case in which this court has recognized an affirmative duty, based on consideration of the four factors … in the absence of a special relationship."); *Hill v. Bridgeview Little League Ass'n*, 745 N.E.2d 1166, 1186–87 (Ill. 2000). In other words, when a criminal act by a third party is the cause of the injury, a special relationship is required before any further analysis. And since no special relationship exists between the parties—nor has one been alleged in the complaint—dismissal was appropriate.

Alex makes a last ditch attempt to label this case as an "affirmative conduct" case, wherein a duty can be found to exist without a "special relationship." He argues that an exception to the special relationship rule exists "where the defendant's acts or omissions create a condition conducive to a foreseeable intervening criminal act." *Rowe v. State Bank of Lombard*, 531 N.E.2d 1358, 1368 (Ill. 1988). One certainly has a duty to refrain from "affirmative conduct" that creates a risk of harm to others; a breach of this duty implicates in-concert liability. *See Simmons v. Homatas*, 925 N.E.2d 1089, 1100 (Ill. 2010). And "[i]f a plaintiff can demonstrate that the defendant did not merely fail to act, but also *assisted* the third party, then the requirement of a special relationship no longer applies." *Id*. (emphasis added). Liability will be found for persons who act in concert with another tortfeasor, "giving substantial assistance or encouragement to

No. 13-3505                                                                 7

another's tortious conduct." *Id.* (citing Restatement (Second) of Torts § 876 (1979)).

Alex has alleged nothing of the sort here. Alex's complaint states that Armslist "design[ed] its website to encourage its users to circumvent existing gun laws, … by easily enabling prospective purchasers to search for and find gun sellers in any and all states." But simply *enabling* consumers to use a legal service is far removed from encouraging them to commit an illegal act. *See Marshall*, 856 N.E.2d at 1059 (citing Restatement (Second) of Torts §302B, Comment *d*, at 89 (1965) ("it is generally reasonable for one to assume that a person will not violate the criminal law.")). Armslist permitted Ladera to place an advertisement on its website and nothing more. It did not invite Ladera or Smirnov to break the law. Alex's allegations fall short of alleging any cognizable negligence claim for which Armslist could be held responsible for Smirnov's acts.

### B. Motion to Reconsider

Alex alleges that the district court, which erred in dismissing his original complaint, should have granted his Rule 59(e) motion to reconsider. To establish relief under Rule 59 (e), a "movant must demonstrate a manifest error of law or fact or present newly discovered evidence." *Boyd v. Tornier, Inc.*, 656 F.3d 487, 492 (7th Cir. 2011). Yet we have held that a Rule 59(e) motion is not to be used to "rehash" previously rejected arguments, *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000), which is precisely what Alex has done here by simply incorporating his arguments regarding the dismissal of his original claim. We find no error in the denial of the motion.

8                                                                    No. 13-3505

*C. Motion for Leave to Amend*

Alex also argues that the district court erred by denying his Rule 15(a) motion to amend, a decision we review for an abuse of discretion. *Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1196 (7th Cir. 1985). Alex mistakenly claims that the *only* requirement for consideration of a post-judgment Rule 15(e) motion for leave to amend is a timely filing of a motion to reconsider under Rule 59(e), which he did. But it is "well settled that after a final judgment, a plaintiff may amend a complaint under Rule 15(a) only with leave of court after a motion under Rule 59(e) or Rule 60(b) has been made *and the judgment has been set aside or vacated*." *Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1179 (7th Cir. 1992) (emphasis added); *see also Amdendola v. Bayer*, 907 F.2d 760, 765 n. 1 (7th Cir. 1990) ("In this circuit, after judgment has been entered a party must have the judgment reopened pursuant to Federal Rule of Civil Procedure 59(e) or 60(b) and then request leave to amend pursuant to Rule 15(a)."). The district court never set aside the judgment and for that reason Alex's Rule 15(a) motion was premature. We find no abuse of discretion.

### III. CONCLUSION

Alex has failed to allege any applicable duty that Armslist owed Jitka in allowing the advertisement on its website. Armslist did not have any relationship with Jitka or Smirnov that would render it liable for the intervening criminal attack. For the foregoing reasons, we AFFIRM the decision of the district court.